Marisela León Martínez
1857 Calle de Reynaldo St.
Las Vegas, Nevada, 89119
(702) 470-9023

FILED ___ RECEIVED
ENTERED ___ SERVED ON
COUNSEL/PARTIES OF RECORD

MAR - 6 2019

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY:_____DEPUTY

IN THE UNITED STATE DISTRICT COURT

FOR THE DISTRIC OF NEVADA

MARISELA LEON MARTINEZ

Plaintiff.

vs.

MGM GRAND HOTEL LLC,
dba MGM GRAND

Defendant(s).

2:19-cv-00390-GMN-GWF

COMPLAINT

"JUDGMENT IS REQUIRED BY JURY"

Date: March 05, 2017

Marisela León Martínez
1857 Calle de Reynaldo St.
Las Vegas, Nevada, 89119
(702) 470-9023

## I. JURISDICTION

1. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343(a) (3), and 42 U.S.C. § 12188(a) (1).

2. Supplemental jurisdiction of violations of state law exist under 28 U.S.C. § 1367. III.

   VENUE

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) in that the claim arose in and Defendant and Plaintiff reside in this District.

## II. COMPLAINT.

PARTYS

4. Plaintiff: Marisela León Martinez, 59 years old, resident of Las Vegas, Nevada, who has been diagnosed with a Permanent Partial Disability (exhibit 1), with multiple level impairment of disc and bulge, L3-L4, L4-L5, L5-S1; Displacement of lumbar intervertebral disc, and other symptoms referable to the back. Overall an 8% whole Person Impairment, with restrictions not to lift weights greater than 18 pounds.

5. I am a qualified worker who has the right to receive equal treatment as the rest of the MGM GRAND workers, as well as the benefits and opportunities; I am a qualified person with a disability in the sense of all applicable statutes including: The Americans with Disabilities Act (ADA) and its amendments. Currently and at all relevant times I have been a resident of Clark County, Las Vegas, Nevada.

6. Defendant: MGM GRAND HOTEL, LLC. dba MGM GRAND. The MGM GRAND Hotel is located on the famous Las Vegas Strip. Its functions include providing games, lodging, spa, conventions, celebration of sporting events, retail sales, food and drink, as well as other entertainment services for the general public.

7. More than 8000 workers are employed in its workforce. MGM GRAND, like any other private entity, state and local government, employment agency or union, is prohibited from discriminating against qualified individuals with disabilities in procedures related to

1

employment and other employment terms, conditions and privileges (Law of Americans with Disabilities, ADA).

8. I started as a MGM GRAND employee from May 19, 2004, hired in the Kitchen Worker position, within the department of Steward, where I worked without interruption for 9 years. I am a qualified worker and I can perform my work with or without a reasonable accommodation.

9. May 4, 2012, I suffered an accident in the company while doing the usual tasks as a kitchen worker, immediately began the process of Worker Compensation (05 /2012 - 12 /2012), during which I spent several months attending medical appointments and working in a position of Light Duty, at the end of this process I was diagnosed with Permanent Partial Disability (PPD), with restrictions not to lift weights greater than 18 pounds.

10. January 8, 2013 Miss Estephanie Tokarski, Specialist of the Department of Labor Relations through a letter, sends me the forms corresponding to the request for Accommodation that were to be filled by me and the health care provider, these forms included the description of the essential functions of my job that should be reviewed by the health care provider at the time of filling them.

11. January 27, 2013, I submit to the Department of Labor Relations the forms filled out and signed by me and the health care provider (exhibit 2).

12. January 28, 2013, just one day after I submitted my request for accommodation, I was called to the company and received the note of Separation from the company from the Director of Human Resources Mrs. Patricia Bush. Cause of separation: Permanent restrictions resulting from a work-related injury, transferred to vocational rehabilitation (exhibit 3). I worked as a kitchen worker for nine years in a row. I was intentionally separated from the company.

13. Note that only one day after formally making my request for accommodation I was separated from the company, undoubtedly an obvious act of retaliation without prior analysis or discussion about a possible and reasonable accommodation, all my rights were violated, as well as what was established in all existing laws that regulate how to proceed in the case of a worker who has a disability.

14. The flexible interactive process that the law indicates never existed, if there had been a dialogue with proposals of ideas in search of a reasonable solution they would have realized that of the total essential functions of my job, only one can't be fully realized, it is the weight (I can only lift 30% of the required), that is 99.3% of the functions I can perform without difficulty including pushing, pulling and carrying (exhibit 4).

15. The accommodation in my position does not represent any economic cost to the company, nor represent any difficulties, they do not even need to create a new position, they do not need to put any companions next to me all the time to help me, because the tasks of the Kitchen Worker are dissimilar and this case has been analyzed as if analyzing a weight lifter, not a Kitchen Worker.

16. In a case like ours find a solution in the same position that occupies the worker is really feasible, since a Kitchen Worker only lifts weight at very specific times: a) Collect the garbage (Position occupied by a full time worker who performs this function), is not my case. b) Collect the silver from the dishwasher (it is made with baskets that are filled by the worker and moved with a cart on wheels) baskets can be filled to your consideration and possibilities, and give all the trips that are necessary. c) Pots and pans (usually empty, if one contains a percentage of waste, then it rises between two people.

17. In carrying out the activities described above especially the one corresponding to the trash has always been normal to be carried out with help among co-workers even without having any restriction or disability is something that flows naturally that is part of even politics of the company through what is called Team-work (exhibit 5).

18. The accommodation that I request is obvious and is based on my work experience; lifting weight is not a labor requirement constant so that a Kitchen worker can perform their work in a normal and efficient manner.

19. January 29, 2013, I filed a grievance through the Culinary Union (exhibit 6).

20. January 30, 2013, I filed a complaint through the hot line, or ethics line of the company (exhibit 7).

21. January 31, 2013 in the afternoon I received a call from the Department of Labor Relations to go to the Hotel the following day, Friday, February 1.

22. February 1, 2013, the Department of Labor Relations informed me that I would be reinstated again to the system, which meant only that I could use the MGM Hotel computers and investigate any open positions where I met the requirements and then apply for this position (exhibit 8), this was done through an Administrative Leave of Absent.

23. I was called to the company and in retaliation I am sent to look for work to the computers without taking into account due process interactive for a possible accommodation.

24. As shown in exhibit 8, only terms such as: We review ...; We cannot...; but there was never any reference to the existence or necessity of an interactive process, to an analysis and discussion between the two parties to find a solution that would lead to a reasonable accommodation, I insisted, I prayed, I pleaded that I wanted and needed to continue working, in vain.

25. I even referred to the case of a co-worker with a situation similar to mine and who was accommodated and continues working at the MGM GRAND (Mercedes Bengochea), but I did not achieve anything.

26. On the one hand they pretend to give me time to look for work and on the other hand accelerate the process of Vocational Rehabilitation. "Or it's one thing or it's another." They were always aware and confident that I would have no chance to get any position within the MGM, since when someone does not speak English their only chance within this company is to start working as a kitchen worker.

27. I was separated from the position of kitchen worker by the restrictions, then as they expect now that I find some position within the MGM, when in addition to my limited English now I also have the inconvenience of restrictions, it is totally absurd.

28. In addition, why should I search for positions only within the MGM Hotel, and not within the entire company? That would have increased the chances of finding a reasonable accommodation. That possibility had previously been granted to another worker (Jennifer Stanis) who also had restrictions and was transferred to the Mandalay Bay Hotel (exhibit 9).

29. They never intended to make a real effort to seek a reasonable accommodation as shown in the letter sent by Miss Patricia L. Holder (Industrial Claims Coordinator) and addressed to Christina Leathers (Human Resources Manager) on December 19, 2012 (exhibit 10) questioning about a possible accommodation and the response from Human Resources was sharp and immediate: No, we cannot offer employment ...

30. On the other hand, Mr. Edward Ochoa (Specialist in Rehabilitation) sent me a letter dated January 24, 2013 (4 days before my separation), so that I would appear in his office on the 31st of January of 2013 (exhibit 11), everything seems to indicate that before I had knowledge that would be separated of the company the area of Vocational Rehabilitation already prepared to process my case.

31. I never received a list of open positions (exhibit 12, Nallelis Jimenez, questions 16, 23, 24), nor was I offered any position. I had to sit in the computer daily and check if there was any position where I met the requirements (little English and not lift a weight over 18 pounds), also, when applied for some position had to get an interview with the Department that corresponded and compete with other candidates because there was no direct placement for me (exhibit 13, Brenda Bradbury, question 27).

32. From the statements made by the employees of the company (exhibit 12, Nallelis Jimenez, questions 16, 23, 24) and (exhibit 13, Brenda Bradbury, question 27) , responsible for giving compliance to everything related to ADA, we can infer that any argument that is used to try to defend or justify the wrong proceeding and the breach of the provisions of the ADA by the company would not only be directed against my arguments, but would also face what was alleged by the own personnel of the company, which becomes something absurd and contradictory that would only cause discomfort.

33. Under this situation I started as Administrative Leave of Absence (ALA) from 02/02/13 until 03/31/13 (58 days) searching and reviewing all the positions that appeared in the MGM Hotel computer, later the ALA was extended one more month from 04/01/13 to 04/30/13 (30 days).

34. Due to family problems I had to interrupt the ALA 5 days before it ended and travel out of the country from 04/26/13 until 05/19/13, upon return the Labor Relations Department granted me 5 more days of ALA for compensate for the days lost during the month of April, ending on 05/25/13, so it was almost 3 months (88 days) that I kept trying to find a position in which my restrictions were not an impediment (exhibit 14).

35. There were several positions in which I fixed my attention, initially introduced applications for Starbucks Attendant and Pantry Worker, but I did not meet the requirements due to my restrictions, in the same way I tried with other positions such as: Coordinator Convention Set-up, EVS Attendant, Runner Mailroom, Uniform Specialist and Wardrobe Attendant-Cirque.

36. In the case of these positions both Managers or Supervisors and Stephanie were responsible of communicating in advance that I did not meet the requirements. That is the reason why applications of these last positions do not appear.

37. On the other hand, contradictions abound in their approaches, in the letter sent by Miss Stephanie Tokarski on June 10, 2013 (exhibit 15) she points out that we maintained an interactive process on January 29, 2013, which is false, that day I was during a large part of the day gathered in the Culinary Union where I interposed the grievance (see exhibit 6).

38. After my separation on January 28, 2013, I do not return to the company until February 1, 2013, in that same letter states that to date I had only expressed interest in a position, but in the letter sent by her two months earlier, in the month of April (see exhibit 14), she had pointed out that there were two positions where I had expressed interest.

39. Anyway it is not the number of applications that have put or left to put, the important thing would be in how many of the positions that offered the MGM in the computers I would have real possibilities of classifying and nevertheless did not apply for them or how many offers I received and I rejected them, no doubt there was none (exhibit 16).

40. Otherwise the cause of my separation would have been very different from the one that appears in the document delivered to me on 06/10/13, when my definitive separation from the company took place (exhibit 17) this was only a side exit that facilitated the way to tell me that I did not meet the requirements.

41. The reason for my separation is the same both in the document delivered on 01/28/2013 (exhibit 3) and the one handed on 06/10/2013 (see exhibit 17) (Permanent Restrictions derived from my PPD), confirming that the discriminatory motive is present at all times and there is no other motive.

42. On 09/16/13, I filed a complaint at the EEOC offices here in the City of Las Vegas, the case number is 487-2013-01248 (exhibit 18), and the case was transferred to the Los Angeles District Office. The investigation included cases of other workers who had also requested accommodation at some point while they were part of the company's staff.

43. For 3 years and 10 months the EEOC did everything possible to find a reasonable way out in my case, but it proved unsuccessful, the company always found justifications and pretexts that prevented progress towards a satisfactory result.

44. At the beginning of July 2017, in a meeting with the investigating party in the case, they explained to me of their limitations and their scope as a mediating party and in turn explained my right to request a letter of right to demand, with which I could have 90 days to find an attorney to represent me and file a lawsuit before a federal or state court.

45. On 07/05/17 I received the Notice of Right to Sue from EEOC (exhibit 19), likewise I applied to the District Office in Los Angeles for the record of my case through FOIA, some of the documents presented here as exhibit are part of this record, for example: exhibit 9 and 12.

46. On September 20, 2017, I filed a claim for discrimination based on the American with Disability Act. in Nevada Federal Court, against MGM GRAND HOTEL LLC, dba MGM GRAND, Case No. 2:17-cv-02454-JCV-GWF. Next to the Claim we also submitted an application to proceed in Forma Pauperis.

47. On 03/06/2018 we received the Order where our Application to Proceed in Forma Pauperis it was granted, It is also ordered that our Claim for Discrimination based on the Americans with Disability Act may procced.

48. On 04/18/2018, we received the Defendant's Motion to dismiss our Claim.

49. In the absence of a response from us to said Motion, a Notice of non-Opposition to the Motion to dismiss was sent by the Defendant's on 05/18/2018.

50. An Order issued by the Court dated 06/05/2018, grant the Motion to dismiss filed by the Defendant's and our case was closed without prejudice (exhibit 20).

51. On 06/12/2018, we filed a Motion for our Discrimination Case based on the Americans with Disabilities Act. to be Reconsidered and Reopened.

52. On 02/20/2019, through an Order issued by the Court, we learned that our Motion for our Case to be Reconsidered and Reopened was denied and the Case closed without Prejudice.

53. At this point we again present our case before the United State District Court for the District of Nevada.

## III. DEMAND.

## CAUSES OF ACTION.

54. Titles I and V of the Americans with Disabilities Act of 1990 (ADA) as amended by the ADA Amendments Act of 2008 (Public Law 110-325) 42 U.S.C. §§ 12101-12213, 47 U.S.C. §§ 225 and 611; 29 C.F.R. Part 1602.1 et seq., 1630.1 et seq., 1640.1 and 1641.1

## CONSIDER DAMAGES.

55. By acting in a discriminatory manner, making use of Retaliation, acting intentionally and with malice, caused the company MGM GRAND HOTEL LLC to divest me of my work, causing significant damage to me and my family in general, filling us with limitations that affected even the aid to relatives in other regions.

56. Psychological, emotional, suffering, and anguish concerns are unavoidable symptoms for someone who has been deprived of their work.

57. Their action largely deprived my household of the financial support that my salary represented.

58. It significantly impaired the maintenance and normal development of my granddaughter who is a minor of age that lives in my custody.

59. It affected and caused the loss of my 401 K retirement fund. I ended up reprimanded as I was unable to continue with the payment of a loan I had requested.

60. They deprived me of the necessary medical insurance, forcing me even to have to pay the Culinary Union to receive this service.

61. It affected and disrupted the growth of my Culinary Union Pension Fund.

62. It caused the loss of my only means of transportation because of the impossibility of continuing to make the corresponding payments.

63. It brings me to the stressful need to pursue a lawsuit in a court for which I am not prepared and I do not even have the funds to request the services of a lawyer who represents me.

REQUEST FOR RELIEF.

For all the above, and in line with the evidence provided, I request the following:

64. The reintegration to my position of Kitchen Worker at the MGM GRAND Hotel, with the enjoyment of all the benefits and opportunities that the rest of the workers.

65. The full payment corresponding to the salary no longer received during the time that I remained separated from the company.

66. Compensation according to their Intentional and Malicious action, the act of Retaliation and their conduct Disrespectful to the Civil and Labor Rights of workers with Disabilities.

<u>DEMAND FOR JURY TRIAL</u>.

67. I hereby request a jury trial on all the issues raised in this complaint.

Marisela León Martínez
1857 Calle de Reynaldo St.
Las Vegas, NV, 89119
(702)470-9023
mariselaleonlv@yahoo.com

AO 187 (Rev. 7/87) Exhibit and Witness List

# UNITED STATES DISTRICT COURT

OF   THE _____   DISTRICT OF _____   NEVADA

MARISELA LEON MARTINEZ

V.

MGM GRAND HOTEL LLC

## EXHIBIT AND WITNESS LIST

Case Number:

| PRESIDING JUDGE | | | | | PLAINTIFF'S ATTORNEY | DEFENDANT'S ATTORNEY |
|---|---|---|---|---|---|---|
| TRIAL DATE (S) | | | | | COURT REPORTER | COURTROOM DEPUTY |

| PLF. NO. | DEF. NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS* AND WITNESSES |
|---|---|---|---|---|---|
| 1 | | | | | Permanente Partial Desability Evaluation Report. |
| 2 | | | | | Request for Accommodation; Employee and Health Care Provider Forms. |
| 3 | | | | | Notice of separation from the Company 01/28/2013. |
| 4 | | | | | Essentials Functions of a Kitchen worker. |
| 5 | | | | | Team Work Practice withing the Company. |
| 6 | | | | | January 29, 2013; Grievance throught of the Culinary Union. |
| 7 | | | | | January 30, 2013; Complaint throught of the Hot Line or Ethics Line of the Company. |
| 8 | | | | | Reinstated again to the System of the Company. |
| 9 | | | | | Jennifer Stanis transfereed to the Mandalay Bay Hotel. |
| 10 | | | | | Letter from Patricia L. Holders(Ind. Claims Coord.) to Christina Leathers(Human Resourc. Manager |
| 11 | | | | | Mrs. Edward Ochoa (Especialist in Rehabilitation) Letter. |
| 12 | | | | | Naliells Jimenez interview, questions 16, 23, 24. |
| 13 | | | | | Brenda Bradbury interview, question 27. |
| 14 | | | | | Administrative Leave of Absence Extended. |
| 15 | | | | | Contradictions and False Interactive Process. |
| 16 | | | | | Positions available in the Computer MGM GRAND (February 2013). |
| 17 | | | | | Notice of Separation from the Company 06/10/2013. |
| 18 | | | | | Complaint in the EEOC Offices, September 2013. |
| 19 | | | | | Notice of Right to Sue. |
| 20 | | | | | Motion for Reconsideration and Reopen Denied Case Closed Without Prejudice. |
| | | | | | |
| | | | | | |

* Include a notation as to the location of any exhibit not held with the case file or not available because of size.

Page 1 of _____ 1 _____ Pages

# EXHIBIT 1

**Parcial Permanent Disability Evaluation Report.**



**WELLNESS**
**CENTER**

## Partial Permanent Disability Evaluation Report

**Examinee:**          Marisela Leon-Martinez
**Date of Birth:**     ~~05/22/1959~~
**Claim Number:**      WC0012012340949
**Date of Injury:**    05/05/2012

**Date of Examination:**   11/21/2013
**Examining Physician:**   Sarah Johnson, DC, CICE
**Examination Location**   3085 E Russell Rd, Ste E, Las Vegas, NV, 89120

**Referral Source:**       VIRGINIA HUNT, ESQ

**Diagnosis(Primary):**    1. Multiple level annular disc tear and bulge, L3-L4, L4-L5, L5-S1
                           722.10 Displacement of lumbar intervertebral disc
                           724.8 Other symptoms referable to the back

**Body Part(s) Evaluated:**   Lumbar Spine
**Permanent Impairment:**     8% Whole Person Impairment

### Introduction

Marisela Leon-Martinez is a 53 year old Hispanic female referred by VIRGINIA HUNT, ESQ for a PPD/IME regarding a Lumbar spine injury which occurred on 05/05/2012. MMI reached 12/12/2012 per medical records from Dr. Estela. The nature and purpose of her visit on Friday, March 22, 2013 was explained to Ms. Leon. She was informed that no patient and/or treating physician relationship is established as a result of this examination. She is aware this report is being sent to VIRGINIA HUNT, ESQ. She was informed and asked to cooperate fully with the examination and to give her best effort without injuring herself during the examination. She voluntarily agreed with this request.

Sources of information for this evaluation included numerous medical records provided by the referral source, a clinical interview of and a clinical examination of the Lumbar spine.

Ms. Leon arrived at 9:50 a.m. for her 10:00 a.m. appointment and the interview commenced at 10:00 a.m., which was followed by the physical exam which was completed at 11:00 a.m. Her daughter and attorney Virginia Hunt attended the evaluation and examination.

### Pre-Existing Status

Form "Request for Additional Medical Information and Medical Release" under Prior History Information the box is checked that states "I have a prior condition, injury or disability that could affect the disposition of the claim referenced above. This can include birth defects, prior surgeries, injuries,

# EXHIBIT 2

**Request for Accommodation.**
**Employee and Healthcare Providers Forms.**



January 8, 2013


Marisela Leon Martinez
1704 Lamplighter Lane
Las Vegas, NV 89104

Dear Ms. Martinez:

Enclosed you will find the following documents which need to be filled out by you and your Health Care provider:

- Request for Accommodation (to be completed by employee)
- Request for Information from your Health Care Provider(to be completed by Provider)
- Job Description (to be used by Provider)

The above information is necessary to determine whether you may be entitled to a reasonable accommodation under the ADA.  Your failure or delay in providing this information will impede our ability to evaluate your rights.

I can be reached at (702) 891-7195.  If you do not contact me within 10 days and your approved leave has expired, you may be subject to immediate separation from MGM Grand.

Sincerely,

Stephanie Tokarski
Employee Relations Specialist

3799 LAS VEGAS BOULEVARD SOUTH LAS VEGAS, NEVADA 89109  PHONE 702.891.1111
mgmgrand.com



# MGM GRAND

## REQUEST FOR ACCOMMODATION

Name _Marisela León_

Position _Kitchen Worker_

Employee # _433575_

Date of Request _1/23/13_

## EMPLOYEE NOTICE

*The Genetic Information Nondiscrimination Act of 2008 ("GINA") prohibits employers and other entities covered by GINA Title II from requesting or requiring genetic information of an individual or family member of the individual, except as specifically allowed by law. To comply with this law, we are asking that you not provide any genetic information when responding to this request for medical information. "Genetic information," as defined by GINA, includes an individual's family medical history, the results of an individual's or family member's genetic tests, the fact that an individual or an individual's family members sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services.*

## TO BE COMPLETED BY THE EMPLOYEE

1. Identify and describe the physical or mental impairment, limitation, illness, condition or disease which is the basis for your request for a reasonable accommodation(s). *See definition of "Disability" below.*

   _Im OK mental and physical only I don't am doing no lifting ≤18 lb's on pounds._

2. Identify and describe the essential function(s) of your job which you are unable to perform without a reasonable accommodation(s). *See definition of "Reasonable Accommodation" below; a job description is attached for your reference.*

   _I can do all my activities, but not change more than 18 pounds (lbs)_

Last Revised 11/2012

Page 1 of 3

3.  Identify and describe the reasonable accommodation(s) you are requesting to enable you to perform the essential functions of your job properly and safely.  Include any special equipment, modifications, etc., that would enable you to perform the essential functions of your job.  *Be as specific as possible.*

I can used any special equipment or
any other machine but I doet can
lifting more ≥ 18 lbs (pounds).

4.  Identify and describe any special methods, skills or procedures which would enable you to perform the essential functions of your job.

I can not lift more than 18 pounds.

5.  Identify and describe any equipment, aids or services that you are willing to provide and utilize to enable you to perform the essential functions of your job.

Not lift more than 18 pounds.

6.  Identify the names, address and phone numbers of physicians, therapists, psychologists or other health care providers who have information or documentation concerning your physical or mental impairment, limitation, illness, condition or disease for which you are requesting a reasonable accommodation.

the only condition One requesting it's
not lift more 18 pounds.

Last Revised 11/2012

Page 2 of 3

**Request for Information from Health Care Provider**

**EMPLOYEE NAME: Marisela Leon Martinez**
**DATE: 1/8/13**

**To the Healthcare Provider:**

The MGM Grand employs the individual identified above. MGM Grand has recently been alerted to the possibility that the employee may suffer from a disability, as that term is defined by the Americans with Disabilities Act, as amended (the "ADA"). Your assistance is appreciated in providing information to assist the Company in determining whether the individual is entitled to a reasonable accommodation in employment and the nature of any such accommodations.

Please review the employee's job description which is attached hereto, complete the questions contained in the medical certification form also attached hereto, and sign this form.

To comply with the Genetic Information Nondiscrimination Act of 2008 (GINA) we are asking that you not provide any genetic information of an individual or an individual's family member when responding to this request for medical information. 'Genetic information' as defined by GINA, includes an individual's family medical history, the results of an individual's or family member's genetic tests, the fact that an individual or an individual's family member sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services.

**If you have any questions, please contact Stephanie Tokarski, Employee Relations Specialist at (702) 891-7195.**

Thank you.

Page 1 of 5

**Medical Certification - To Be Completed By Health Care Provider**

**Part A: Questions to help determine whether the patient has a qualifying medical condition.**

1.  Does the patient have a physical or mental impairment?

    ☐ No   Stop, no further evaluation needed

    ☑ Yes   Please describe the nature of this patient's impairment and provide a diagnosis, including the ICD-9-CM code if applicable

    *846.0   Lumbosacral Sprain/Strain*
    *L3-L4 disc protrusion*

2.  How long will the impairment likely last (i.e. permanent, a few months, two weeks)?

    *permanent*

3.  Is the patient substantially limited in any major life activity/bodily function, such as walking, talking, standing, kneeling, bending, sitting, working, thinking, concentrating, speaking, hearing, learning, lifting, eating, breathing, caring for oneself, etc.?

    ☑ No      ☑ Yes

    *e.e.*

4.  If you answered "yes" to question 3, please identify what major life activity or activities are affected.  Please do not limit your response only to those activities in the written job description.  In fact, the term "substantially limits" is to be considered broadly, and an impairment is a disability if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population.  Please be specific and list the activity or activities the employee's condition limits.

    *no lifting > 18 lbs*

5. For each major life activity/bodily functions listed in Question 4, describe the extent of the patient's limitation (i.e. patient cannot lift more than 15 pounds permanently, patient can not stand for more than 15 minutes for two weeks, etc.).

*no lifting >18 lbs*

6. Is the patient substantially limited in working?

☐ Yes   ☑ No

If yes, please explain (i.e. what type of work or class of jobs is the patient limited in performing).

**Part B: Questions to help determine whether and what type of accommodation is needed.**

7. Is the patient currently able to perform all of the functions of his/her position as outlined in the attached job description without restriction?

☐ Yes   ☑ No

If your answer is "no," after referring to the enclosed job functions description, please identify the specific function(s) of the position that the patient is unable to perform.

*no lifting > 18 lbs*

8. For each job function identified in Question 7, please describe in detail the degree or extent of the patient's restrictions and the known or expected duration of the job restriction (e.g., individual's 40-pound lifting restriction is permanent; individual cannot work more than 4 hours per day and/or on a particular shift for two weeks). If the restriction is episodic, please indicate both the history of such restriction and its anticipated future frequency.

*no lifting > 18 lbs (permons*

9. For each job function identified in Question 7, describe the activities that the patient can perform within his/her restrictions (e.g., although the individual cannot lift over 40 pounds, he/she can lift 15 pounds frequently and 30 to 40 pounds occasionally).

*lift 15 lbs frequently*

10.    If the employee's physical or mental impairment will prevent him/her from coming to work as regularly scheduled, please identify the frequency and duration of expected absences.

*N/A*

11.    Without identifying any specific medications, please advise if the employee is taking any prescription or over the counter medications that have side effects that may limit the employee from performing his/her essential job functions, or that may cause drowsiness or disorientation, such that working may pose a safety hazard to the employee or to others.

*patient takes prescription medication intermittently*

12.    If there are medications that limit the employee's ability to perform the essential functions of his job or that may cause drowsiness or disorientation, what is your estimate of the expected duration the employee will be taking these medications?

*4-6 months*

13.    Please provide any suggestions for possible modifications or adjustments to job duties or work environment that would assist the patient to perform his/her duties and explain how the accommodation would aid him/her and why the suggested accommodation is needed.

*no lifting >15 lbs*

14.    If there are no other suggested accommodations that would allow the patient to return to work and perform the essential functions of his/her job and you are suggesting a continuous leave of absence, state when the patient is expected to be able to return to work and perform the essential functions of the job, with or without a reasonable accommodation.

*no*

Page 4 of 5

## Part C: Health Care Provider Signature

By signing below, you are affirming the accuracy of the above information.

Healthcare Provider's Signature:

Date:

_1-25-13_

Name of Physician/Practitioner:

_Cesar Estela, MD_

Degree/Specialty/Type of Practice:

_MD_

Street Address, City, State, and Zip

_1399 Galleria Dr #100_

_Henderson NV_

_89014_

Contact Number _(702) 697 0020_

State of License: ~~9610~~ _Nevada_

License Number: _9610_

Name of Individual Preparing Form, if
Different from Above:

Cesar Estela, MD
Physical Medicine & Rehab
1399 Galleria Dr #100
Henderson, NV 89014

### Please Return Completed Form To:
MGM Grand, Employee Relations
Fax: (702) 891-3756 and/or Email: stokarski@lv.mgmgrand.com

## Essential Functions

This is a required checklist for attachment to Position Descriptions. It clarifies the smallest components of the mental and physical requirements of the job. Check all areas that are essential in performing the job, according to the essential functions section in the position description guidelines. Signatures are to be obtained at the time of interview for the position.

| ☑ | Physical Requirements | ☑ | Work Environment | ☑ | Mental Requirements |
|---|---|---|---|---|---|
| | | | | | |
| | Balancing | X | Communication | | Analytical |
| | Bending | X | *verbal* | | Clerical |
| X | Carrying | | *written* | | Comprehension |
| X | __60__ pounds | X | Confined area | X | Crisis incidents |
| X | Clear speech | X | Contacts | `X` | Customer service |
| X | *simple* | X | *works alone* | X | Decision making |
| | *complex* | X | *works around others* | | Fatigue |
| | Climbing | X | *works with others* | X | High pressure |
| | Crawling | X | Exposure to dust / dirt | X | Judgment |
| X | Crouching | X | Exposure to fumes / odors | | Long hours |
| | Distant vision | X | Extreme cold | | Math skills |
| | Driving | X | Extreme heat | | *advanced* |
| | *auto/van* | X | Fast pace | | *basic* |
| | *limousine* | X | Hazardous conditions | X | Memorization |
| X | Flexibility | X | *chemicals* | X | Organization |
| X | *upper body* | X | *high structures* | | Perception |
| X | *lower body* | X | *high voltage* | X | Reading |
| X | Hearing/Listening | X | Indoors | X | *simple* |
| X | Kneeling | X | Noise levels | | *complex* |
| X | Lifting | X | *low to moderate* | | Repetition |
| X | __60__ pounds | | *high* | X | Safety hazards |
| | Near vision | | Office conditions | X | Tight deadlines |
| | Normal vision | X | Outdoors | X | Working conditions |
| X | Pushing/Pulling | X | Restricted area | X | Writing |
| | Reaching | | Shifts | X | *simple* |
| X | Sitting | | Smoke | | *complex* |
| X | Standing | | _____% Travel | | |
| X | Stooping | | Vibration | | |
| | Typing | | Wet/Humid | | |
| | _____w.p.m. | | | | |
| X | Walking | | | | |

1/8/2013

# EXHIBIT 3

Separation of the Company 01/28/2013.

**PAN - Separation**
Effective Date: 01/28/13 MM/DD/YY
Last Day Worked: 01/28/13 MM/DD/YY

Doc ID : 7511286

**MARISELA LEON MARTINEZ – 433575**
1704 LAMPLIGHTER LN
LAS VEGAS NV  89104  (702) 426-3933

|  | From |  | To |
|---|---|---|---|
| Employer | MGM GRAND HOTEL, LLC | 001 | |
| Company | MGM GRAND HOTEL | 001 | |
| Division | FOOD & BEVERAGE | 300 | |
| Department | CONVENTION/BANQUETS | 31512 | |
| Sub Department | STEWARDS | 3005 | |
| Position | KITCHEN WORKER|100S3/8 | 565271 | |
| Shift | DAY | 2 | |
| Rate of Pay | HOURLY H | 13.0920 | |
| Employment Status | ON CALL ALT WORK DUTY | | |
| Remarks | separation due to permanent restrictions from work related injury, transfering to vocational rehab. cbl | | |

X 

# EXHIBIT 4

**Essential Functions of a Kitchen Worker.**

## Essential Functions

This is a required checklist for attachment to Position Descriptions.  It clarifies the smallest components of the mental and physical requirements of the job.  Check all areas that are essential in performing the job, according to the essential functions section in the position description guidelines.  Signatures are to be obtained at the time of interview for the position.

| ☑ | Physical Requirements | ☑ | Work Environment | ☑ | Mental Requirements |
|---|---|---|---|---|---|
| | | | | | |
| | Balancing | X | Communication | | Analytical |
| | Bending | X | *verbal* | | Clerical |
| X | Carrying | | *written* | | Comprehension |
| X | _60_ *pounds* | X | Confined area | X | Crisis incidents |
| X | Clear speech | X | Contacts | X | Customer service |
| X | *simple* | X | *works alone* | X | Decision making |
| | *complex* | X | *works around others* | | Fatigue |
| | Climbing | X | *works with others* | X | High pressure |
| | Crawling | X | Exposure to dust / dirt | X | Judgment |
| X | Crouching | X | Exposure to fumes / odors | | Long hours |
| | Distant vision | X | Extreme cold | | Math skills |
| | Driving | X | Extreme heat | | *advanced* |
| | *auto/van* | X | Fast pace | | *basic* |
| | *limousine* | X | Hazardous conditions | X | Memorization |
| X | Flexibility | X | *chemicals* | X | Organization |
| X | *upper body* | X | *high structures* | | Perception |
| X | *lower body* | X | *high voltage* | X | Reading |
| X | Hearing/Listening | X | Indoors | X | *simple* |
| X | Kneeling | X | Noise levels | | *complex* |
| X | Lifting | X | *low to moderate* | | Repetition |
| X | _60_ *pounds* | | *high* | X | Safety hazards |
| | Near vision | | Office conditions | X | Tight deadlines |
| | Normal vision | X | Outdoors | X | Working conditions |
| X | Pushing/Pulling | X | Restricted area | X | Writing |
| | Reaching | | Shifts | X | *simple* |
| X | Sitting | | Smoke | | *complex* |
| X | Standing | | _____ % Travel | | |
| X | Stooping | | Vibration | | |
| | Typing | | Wet/Humid | | |
| | _____*w.p.m.* | | | | |
| X | Walking | | | | |

4

1/8/2013

# EXHIBIT 5

Team Work practice within the Company.

{ DEMONSTRATE
TEAMWORK
WITH INTERNAL
CUSTOMERS }

Practice teamwork behind the scenes. We are each other's internal customers and must be courteous and respectful by assisting each other when necessary. We must never say: "That's not my job."

To report theft or damages please call ext. 5-7669

# EXHIBIT 6

January 29, 2013, Grievance through the Culinary Union.

# EL PROCEDIMIENTO DE AGRAVIOS

Usted acaba de llenar una **HOJA DE DATOS DE AGRAVIO**. Ahora ¿qué pasará?

1. Su Especialista en Agravios investigará la situación. En ocasiones, durante el curso de la investigación el Especialista en Agravios logra resolver el problema con el Empleador.

2. Si el problema no se resuelve, y el Especialista en Agravios cree que se ha violado el contrato de negociación colectiva, se asentará con el Empleador una carta oficial del agravio. Si él/ella no cree que hay una violación del contrato, **no habrá acción adicional** y usted será notificado. **Siempre infórmenos de dónde podemos encontrarlo. Si usted cambia de domicilio o su número de teléfono, por favor notifíquele a su Especialista en Agravios lo antes posible. Si no logramos localizarlo, es posible que tengamos que retirar el agravio.**

3. Muchas quejas se resuelven cuando la Unión y el Empleador hablan sobre la situación después de haber enviado la carta del agravio. Si esto no sucede, entonces habrá una reunión de la "Comisión de Resolución" ("Board of Adjustment" o BOA, por sus siglas en inglés) acerca del agravio. Esta Comisión consiste de dos representantes de la Unión, y dos representantes del Empleador (usualmente de la oficina de personal). Usted tiene que estar presente, y también puede estar presente cualquier otra persona que tenga pruebas relacionadas con su agravio. **(Usted será responsable de asegurarse de que sus testigos estén presentes.)** El propósito de la reunión de la Comisión es intercambiar información y escuchar a los testigos, pero no es formal (¡lo cual significa que no siempre es agradable!).

4. Si los miembros de la Comisión llegan a un acuerdo para solucionar el agravio, ésa será resolución y será final.

5. Si los miembros de la Comisión no llegan a un acuerdo, entonces se considera que está en un "punto muerto". El próximo paso, si lo hay, es el arbitraje.

6. **La Unión no lleva todos los agravios en punto muerto a un arbitraje.** Solamente aquellos casos que se considera que tienen la oportunidad de tener éxito en un arbitraje se llevan adelante. Muchas veces la Unión pide la asesoría de su abogado.

7. En los casos de disciplina (que no sean de despido) o en violaciones del contrato, el arbitraje usualmente ocurre varios meses después de reunirse la Comisión de Resolución. El Árbitro es uno de varios expertos laborales escogido por la Unión y los Empleadores para ver los casos de esta industria. Todos los Árbitros tienen mucha experiencia en analizar quejas relacionadas con contratos laborales. En la mayoría de los casos, el Empleador paga la mitad del costo del Árbitro y la Unión paga la otra mitad. Por lo general, no se toma una decisión en esta audiencia de arbitraje. Los abogados de la Unión y del Empleador le presentan un "escrito" al Árbitro. Los escritos son argumentos que explican por qué el caso debe decidirse de una manera u otra. Después de analizar los datos incluidos en el escrito, el Árbitro emite una decisión por escrito. Esto sucede aproximadamente tres meses después de la audiencia de arbitraje

8. En los casos de despido, el arbitraje se lleva a cabo como un tribunal, pero menos formal. En estos Arbitrajes Acelerados, la Unión usa la representación de uno de sus Especialistas de Agravios para presentar el agravio de usted. Al final de esta audiencia de arbitraje se da una decisión.

**20130356**

## Culinary Worker's Union, Local 226

**Reconozco que se me ha informado acerca de las obligaciones indicadas arriba:**

Marisela Leon-Martinez                      Fecha de Hoy: 1/29/2013

Floyd Williams         (702) 386-5211              Fecha de Hoy: 1/29/2013

# EXHIBIT 7

January 30, 2013, Complaint through the Hot Line, or Ethics Line of the Company.

## Report Details

**Report Submission Date**
1/30/2013

**Reported Company/Branch Information**
Location MGM Grand Las Vegas
3799 Las Vegas Blvd South
City/State/Zip: Las Vegas, NV, 89109, USA )

**If you are not an employee, what is your relationship to MGM Resorts International?**
Former employee

**Identifique a las personas comprometidas en este comportamiento:**
Christina (surname unknown) - HR employee
Stephanie Tokarski - HR specialist
Mayeli Jimenez - HR assistant
Michael Figueroa - Steward assistant manager

**Do you suspect or know that a supervisor or management is involved?**
Yes

**Si éste es el caso, entonces ¿quién?**
Michael Figueroa - Steward assistant manager

**Have you notified management or human resources?**
No

**Please describe the general nature of this matter?**
Unfairness

**Please state the name of the department or area where the incident or violation occurred?**
Steward department

**Indique el tiempo específico o aproximado en el que ocurrió este incidente:**
1/28/2013

**¿Por cuánto tiempo, cree usted que ha estado sucediendo este problema?**
Once

**How did you become aware of this incident?**
It happened to me

**Are there any witnesses to the incident?**
Yes

**If yes, then who?**
Richard (surname unknown), steward, has more information.

**Details**
Ms. Leon had an accident and injury on 5/5/2012, and she was on light duty for 7 months. She was later sent for an MRI and found she had 2 injured vertebral disks. After another medical evaluation, Ms. Leon was told she had permanent restrictions. The doctor said she could only lift 18 pounds as her only restriction.

On 1/28/2013, Ms. Leon turned in a letter from her doctor with this restriction. Only hours later, the implicated parties called Ms. Leon and told her she was terminated due to lack of work for her given her restriction. Ms. Leon noted she was protected by the ADA. She stated she wouldn't represent any extra cost or problem to the company, and if needed she could be moved to another area. Ms. Leon noted that other coworkers have even stronger restrictions, but the implicated parties didn't seem to care about this.

Ms. Leon notes that Michael, in particular, causes serious problems in the Steward Department. He makes the schedule poorly, has many complaints about his leadership, and he retaliates against anyone who objects to him. He has fired many employees unjustly.

**Follow-Up Notes**
There are no additional notes for this report.

**Follow-Up Questions/Comments**
**1/31/2013 9:41 AM posted by Organization**
The investigation is in process.
**5/9/2013 10:50 AM posted by Organization**
The Company has investigated the allegation(s) which were raised in this complaint and has taken action, if appropriate. The Company cannot provide any details of the investigation, as such information is considered confidential. The Company can assure the caller that it

has conducted a full and fair investigation, and thanks the caller for bringing these concerns to our attention.

Chat Transcripts
There are no chat transcripts for this incident.

# EXHIBIT 8

I was reinstated again to the system.



February 7, 2013


Dear Ms. Leon Martinez,


Per our conversation on February 1, 2013 your employment has been reinstated effective January 28, 2013.  We have reviewed your request for an accommodation to perform the essential functions of your position.  We have also reviewed the required documentation stating that you can not lift over 18 pounds. The essential functions of a Kitchen Worker require the ability to lift up to 60 pounds.  After careful review, we have determined that we are not able to accommodate your request.

You have been granted an Administrative Leave of Absence from January 28, 2013 through March 31, 2013.  The purpose of the Administrative Leave is to provide you with time to research open positions with MGM Grand that are within the parameters of your permanent restrictions. Please note this leave is unpaid.


As we are not able to provide you with an accommodation at this time, your Industrial Claims Coordinator, Patricia Holder, has referred you for Vocational Rehabilitation Assessment.  As part of the Vocational Rehabilitation process, you will receive Temporary Total Disability (TTD) payments from Corporate Worker's Compensation.


If any questions arise, please do not hesitate to contact me.


Sincerely,



Alma Lopez
Employee Relations Specialist
MGM Grand Hotel & Casino
Phone: (702) 891-7156




Enclosures:   Reinstatement PAN

# EXHIBIT 9

Jennifer Stanis transferred to the Manday Bay Hotel.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Los Angeles District Office**

255 E. Temple Street, 4th Floor
Los Angeles, CA 90012
(213) 894-1000
TTY (213) 894-1121
FAX (213) 894-1118

Case Review

Jennifer Stanis v. MGM
487-2013-00707

Marisela Leon v. MGM
487-2013-01248

MGM—What is in the files
**Stanis:**

Prior to receipt of PS, Investigator DeMarco requested a Fact Finding Conference; however R pushed back stating they had not had an opportunity to mediate or provide a PS.

**Position Statement dated 8/27/13 and received 9/3/13.**

Job duties:
Front Registration Desk: responsible for checking in guest, checking out guest, answering guest questions, printing reservation information, resolving guest concerns and dealing with group reservations.

Hired 9/28/10 as a Front Desk Clerk

On a leave of absence for ADA accommodation as of 8/27/13

W/C injury—created a temp position for CP to perform call backs for guests from 10/2012-1/2013—all had to return to front desk at that time due to business necessity

Position only created to be temporary—could not continue her in it

2/2013—CP's new restrictions say she could not stand for more than 20 mins.
Doc note dated 2/28/13 says CP can't stand for more than one hour continuously—PT can stand for 20 mins but not more than one hour in a 24 hr period—PT can work at front desk with stool
Cannot stand greater than one hour daily for 2 years

Because job requires CP to stand for more than one hour per 24 hour period to provide guest services, CP was provided a leave of absence for an accommodation beginning on 3/2/13 and continuing to date of PS 8/27/13

R alleges that CP Stanis had the opportunity to automatically interview with the appropriate directors/managers for open positions that she believed she was qualified for. CP expressed

- Provided translations for Ms. Leon
- Does not have access to where employee medical records are stored

Shannon Duralde (HR Business Partner)
- Does RA, FMLA, and other HR functions
- Provides overview of the RA process that she does with employees
- ADA requests in a green folder in a locked office—only HR has access.
- Process—doctor's certifications ensure the employee meets the qualifications and sets up an interview with the department—up to department to accept them
- Was the main contact for Stanis
- In MGM systems employees can only apply for one job at a time??
- Stanis declined the on-call position because it couldn't guarantee full time hours
- Standing 8 hours: required to walk from their station to back office to discuss guest requests. Clients must also walk to the cash drawers, use the restroom, go to the employee dining room, and stock their work stations

**

Modified Step 1 RFI sent 10/23/14 with a due date of 11/7/14 (only has Stanis listed on it)
  References 4/11/14 correspondence and 3/11/14 correspondence
  Extension granted to 11/21/14
  Extension granted to 11/25/14
Step 1 RFI response received on 11/25/14
Step 2 RFI sent to R 5/19/15 (only sent under Stanis name and case number)
Step 2 RFI response received on 7/13/15
  R only provided data for the following dates: 7/10/12-7/9/13
  R claimed the rest of the request was overly broad and burdensome
9/18/14 Email from Rosa to Jake that discusses the room full of medical records
9/19/14 Email to Rosa from Jake discussing the options for reviewing/copying the RA files. In this email Jake provides that R informed him that he would only have access to their property with a subpoena. He reported that he was provided with this information during his onsite and management interviews.
Jake provided that following information regarding the file:
1. All RA files are in a separate green folders and they contain medical notes, requests, and correspondences for each employee who uses the RA policy
2. R states none of this is in electronic format
3. R does not audit any of these folders
4. R unsure of what is in the files
5. Green folders are held for 2 years and then stored off-site
6. There could be hundreds of these files.

Hurdles
  Email from CP dated 3/4/13 states that she can't stand for more than 5 minutes at a time and that she may need to call out of work 4-5 times a week, needs to be able to leave early and/or come in late
  R provided documentation of internal complaints/investigation into CP's attitude at work dated 3/15/13 & 3/20/13
  CP transferred to Mandalay Bay on 10/1/13 (is Mandalay Bay part of MGM?)
  CP was offered On-Call Group Reservation Specialist and she refused the position
  CP wants out of the case

# EXHIBIT 10

Letter from Miss Patricia L. Holder (Industrial Claims Coordinator)

to Christina Leathers (Human Resources Manager)

# MGM RESORTS
INTERNATIONAL™

December 19, 2012

MGM RESORTS

JAN 2 8 2013

WORKERS' COMP

Christina Leathers
Human Resources Manager
MGM Grand Hotel & Casino
3799 Las Vegas Blvd. South
Las Vegas, NV 89109

RE:   Claim #:      WC0012012340949
      Employee:    Marisela Leon Martinez
      D/Injury:    5/2/12
      Employer:    MGM Grand

Dear Ms. Leathers:

Marisela Leon Martinez1, who was injured while in your employ, was recently released to return to work with permanent restrictions imposed by her treating physician, Cesar Estela, M.D.  Ms. Leon Martinez's restrictions consist of no lifting greater than 18 pounds.  A copy of the discharge report and Functional Capacity Evaluation is enclosed for your review.

If you are able to provide employment consistent with these limitations, we encourage you to do so as expeditiously as possible, preferably within thirty (30) days.  Pursuant to certain provisions of NRS 616C.590 and NAC 616C.580, if no offer of employment is provided which is consistent with the limitations imposed, provides a gross wage that is equal to or greater than 80 percent of the gross wage that was earned at the time of her injury, and has the same benefits as the position held at the time of her injury, you waive any right to object to the provision of any future vocational rehabilitation services for this injured employee and may be liable for the costs associated with such services.

Should you wish to make an offer of modified employment, it is suggested that you adhere to the following:

1.  The offer be in writing;
2.  Be mailed to the injured employee; and
3.  Include the net wage to be paid, the hours which the injured employee will be expected to work, a reasonable description of the physical requirements of the employment, a reasonable description of the duties the injured employee will be expected to perform, a description of any fringe benefits of the employment, and the geographical location of the position.
4.  If the actual requirements for the employment offer materially differ from the offer of employment, and the employer fails to take corrective action, the injured employee may be entitled to vocational rehabilitation services.
5.  The injured employee be allowed a reasonable time, not to exceed seven (7) days after the date of the offer of employment is made, within which to accept or reject the offer.

Christina Leathers
RE:   Marisela Leon Martinez
December 19, 2012
Page Two

MGM RESORTS

JAN 2 8 2013

WORKERS' COMP

6.  If the offer of employment is expected to be of limited duration, the employer shall disclose that fact to the injured employee in the offer and state the expected duration.
7.  An employer must not offer temporary or permanent employment which he does not then expect to be available to the injured employee as offered.

In addition to the above, an offer of modified employment to the injured employee will need to take into account the provisions of NAC 616C.586, enclosed.  If you are unable to provide employment consistent with the injured employee's physical limitations per the foregoing, the appropriate referral for vocational rehabilitation assessment and/or services will take place.

Your prompt response to this request is most appreciated.  If you have any questions, please give me a call.

Very truly yours,

Patricia L. Holder
Industrial Claims Coordinator
MGM Resorts International
Enc:   Discharge Report – Dr. Estela
        Functional Capacity Report
        NAC 616C.586
cc:    Claim File

( )  Yes, we can offer a permanent position consistent with the physical limitations listed above.

(X)  No, we cannot offer employment and we will advise the injured employee of their separation benefits.

_____          1/28/2013
Signature                                Date

2 of 2

# EXHIBIT 11

Mr. Edward Ochoa (Specialist in Rehabilitation) Letter.

# INDUSTRIAL REHABILITATION OF NEVADA

### 5280 S. Eastern Ave., Suite A-3 Las Vegas, Nevada 89119
### 702-382-8252    Fax 702-382-3640

January 24, 2013

Marisela L. Martinez
1704 Lamplighter Lane
Las Vegas, Nevada 89104

RE: **Vocational Rehabilitation Services**
   **Claim #WC0012012340949**
   **Date of Injury: 06/06/2012**

Dear Ms. Martinez:

Pursuant to your industrial injury of June 6, 2012, the administrator for your workers' compensation claim, MGM Resorts International-WC, has requested that my office commence the vocational rehabilitation process.  It is my understanding your employer cannot provide you with modified employment consistent with the physical limitations imposed by your treating physician.

Accordingly, I wish to meet with you in order to discuss your vocational rehabilitation options relative to your re-employment and career interests, etc.  Also, the option of requesting a lump sum buyout instead of the provision of vocational rehabilitation services will be fully explained to you as well.  Please be prepared to discuss these topics with me during your appointment.  Please note, I have scheduled an appointment for you which will take place in my office on the date and time indicated below:

### Thursday – January 31, 2013

### 2:30 PM

Additionally, please complete the enclosed forms and bring them with you for your appointment. Should you have any questions prior to your appointment, please feel free to contact me at 382-8252.

Sincerely,

Edward Ochoa, MA, CDMS, CCM
Rehabilitation Specialist

cc: MGM Resorts-WC
   V. Hunt, Esq.

# EXHIBIT 12

Nallelys Jimenez interview, question 16,23,24.

July 22, 2014
Start Time:     12:30 p.m.
End Time:       12:45 p.m.

Questions for HR Business Partner Associate, Naelly Jimenez-Cardona.

A. Summary for witnesses rights as to retaliation under ADEA and ADA.
B. Participation is not an admission of guilt concerning this investigation.
C. You are under oath. Intentionally making false statements could result in a charge of perjury.

| Question Number: | Question | Response |
|---|---|---|
| 1 | Please state your full name for the record. | Naelly Jimenez-Cardona |
| 2 | When were you hired by the Respondent? | Jan 12, 2011 |
| 3 | What was your job title at hire? | Compensation Clerk |
| 4 | What is your current job title? | Became an Employee Relations Specialist in May 2012.<br><br>My job title changed to HR Business Partner Associate in January 2014. |
| 5 | How long have you been in this position? | Six (6) months. |
| 6 | What are your job duties? | Workers Comp.<br>Unemployment Benefits<br>Legal Admin.<br>Time loss paperwork.<br><br>I do not work on RA and I have no involvement in job duties analyses. |
| 7 | Do you supervise any employees? | No. |
| 8 | If so, how many? | N/A. |
| 9 | Were you provided with training regarding EEO laws by the company? | Yes. |
| 10 | What training was provided to you (for example what laws)? | Hand book.<br>In class. I don't remember when.<br><br>Online trainings – I don't remember. |

 

| | | |
|---|---|---|
| 11 | Who gave you the training? | N/A. |
| 12 | When did the training take place? | N/A. |
| 13 | How long was the training? | N/A. |
| 14 | Was this training for supervisors or for all employees? | N/A. |
| 15 | What type of format was the training provided under (for example classroom or computer format)? | N/A. |
| 16 | Please explain your Company's ADA Reasonable Accommodation process. | I only provide a List of available positions to the HR Business Partners.<br><br>For Ms. Stanis, I gave the positions to Ms. Duralde.<br><br>For Ms. Leon, I provided translations. |
| 17 | Who are involved in this process (i.e., corporate, Department only, combination)? | I don't know. |
| 18 | Where are ADA requests stored and/or tracked? | I don't know. |
| 19 | Who has access to these records? | I don't know. |
| 20 | Please explain if your Company audits and/or reviews RA requests? | I don't know. |
| 21 | How frequent are these audits? | I don't know. |
| 22 | For employees requesting a vacant, posted position as a reasonable accommodation, please explain the accommodation process that is taken to evaluate such requests. | I don't know. |
| 23 | Please explain your involvement in Maricela Leon's request. | I just provided translations for Ms. Leon. |

| 24 | Please explain your involvement in Jennifer Stanis's request. | I only provided the list of available positions to Ms. Duralde. |
|----|----|----|
| 25 | In Ms. Stanis' situation, why was she interviewed for available positions for which she was qualified? (i.e., April and May, 2013 - Group Reservations Specialist (full-time); Group Reservations Supervisor (full-time); however, offered the On-Call GRS position in August 2013. | I Don't recall any positions specifically. |
| 26 | Approximately how many reasonable . accommodation requests were filed with your Department last year? | I don't know. |
| 27 | Where are these requests stored and who has access to these records? | I don't know. |
| 28 | Please explain how your department handles and stores employee medical information. | I don't know. |
| 29 | Where are the Employee medical records stored? | I have no Access. |
| 30 | Who has control and/or access to these files? | I don't know. |
| 31 | Please explain who conducts a job duty analysis in order to determine the essential job duties for positions. | I don't know. |
| 32 | How frequently are job duty analyses conducted for positions? | I don't know. |
| 33 | Please explain why "standing for right (8) hours per day" is an essential job duty for a Front Desk Clerk? | I don't know. |
| 34 | Would you like to add anything else? | No. |

# EXHIBIT 13

**Brenda Bradbury interview, question 27.**

July 22, 2014
Start Time:    9:35  a.m.
End Time:     10:02  a.m.

Questions for Human Resources Director, Brenda Bradbury

A. Summary for witnesses rights as to retaliation under the ADA and ADEA.
B. Participation is not an admission of guilt concerning this investigation.
C. You are under oath. Intentionally making false statements could result in a charge of perjury.

| Question Number: | Question | Response |
|---|---|---|
| 1 | Please state your full name for the record. | Brenda Bradbury |
| 2 | When were you hired by the Respondent? | 10/2012 |
| 3 | What was your job title at hire? | HR Director |
| 4 | What is your current job title? | HR Director |
| 5 | How long have you been in this position? | N/A |
| 6 | What are your job duties? | Work with VP of HR on initiatives regarding guest services, employee relations, and learning development. |
| 7 | With regards to employee relations, who do you contact? | Director of Employee Relations changed to Sr. Business Partner - Patricia Bush.<br><br>This is for employee complaints, reasonable accommodations, investigations, etc. |
| 8 | How often do you meet with Ms. Bush? | We have weekly meetings. |
| 9 | Are these weekly meetings documented? | No. It is all verbal. |
| 10 | Are any final decisions related to reasonable accommodations and/or protected complaints made during these meetings? | No final decisions are made in the meetings.<br><br>The final decisions are made in the Department and with internal legal counsel. |

| 11 | Please explain your involvement in the reasonable accommodation process. | I was not involved with the charges.<br><br>I was not aware of their requests. |
|----|---|---|
| 12 | Do you supervise any employees? | Yes |
| 13 | If so, how many? | Total of five (5):<br>Learning Development Director;<br>Senior Business Partner; and three (3) Administrative employees. |
| 14 | Were you provided with training regarding EEO laws by the company? | Yes.<br><br>Handbook<br>Orientation<br>Bi-annual basis - in person class<br>Employment law reviews on the topic of Harassment; Discrimination; and retaliation.<br>Online modules. |
| 15 | What training was provided to you (for example what laws)? | All managers and above. |
| 16 | Who gave you the training? | In house legal counsel. |
| 17 | When did the training take place? | Last time was in 2012. |
| 18 | How long was the training? | Over 1 hour. |
| 19 | Was this training for supervisors or for all employees? | N/A |
| 20 | What type of format was the training provided under (for example classroom or computer format)? | N/A |
| 21 | Please explain your Company's ADA Reasonable Accommodation process. | ADA process starts with Employee Relations getting the request/Complaint.<br><br>We start the interactive process with a Packet of documents for the doctor in order to understand the conditions.<br><br>We individually access the needs. |



| | | Outside legal counsel may get involved to discuss. |
|---|---|---|
| 22 | Who are involved in this process (i.e., corporate, Department only, combination)? | Department Heads Employee Relations Specialists. Doctors possibly. |
| 23 | Where are ADA requests stored and/or tracked? | In Employee Relations office. |
| 24 | Who has access to these records? | Employee Relations Specialists. |
| 25 | Please explain if your Company audits and/or reviews RA requests? | Not sure about audits being conducted. Ms. Bush would do the audits, if we do them. |
| 26 | How frequent are these audits? | Not sure. |
| 27 | For employees requesting a vacant, posted position as a reasonable accommodation, please explain the accommodation process that is taken to evaluate that request. | We look at the Job description. Employees are provided a list of open jobs within MGM Grand. There is no direct placement. They get interviewed. This has been in place since I started. |
| 28 | Approximately how many reasonable accommodation requests were filed with your Department last year? | No cannot estimate. Don't want to. |
| 29 | Where are these requests stored and who has access to these records? | Employee relations. |
| 30 | Please explain how your department handles and stores employee medical information. | Locked doors in HR. |
| 31 | Where are the Employee medical records stored? | All RA requests are stored in HR Dept. at MGM behind a locked door. |
| 32 | Who has control and/or access to these files? | HR Staff – Employee Relations Patricia Bush and HR Director. |

# EXHIBIT 14

**Leave of Absence extended.**



April 24, 2013

Marisela Leon Martinez
1704 Lamplighter Lane
Las Vegas, NV 89104

Dear Ms. Leon Martinez,

Per our conversation on April 9, 2013 your Administrative Leave of Absence has been extended from April 1, 2013 until April 30, 2013.  The purpose of the extension is to allow you additional time to apply for positions that you are qualified for and fall within the parameters of your permanent restrictions.  To date, the positions you have expressed interest in are Starbucks Attendant and Pantry Worker.  Either they do not fall within the parameters of your restrictions or you do not meet the minimum requirements.  I will gladly continue to assist you in seeking positions that will be suitable for you.

During our meeting on April 23, 2013 you requested an additional extension of your Administrative Leave due to personal reasons that require you to leave the country.  According to your travel itinerary, you will be out of the country from April 26, 2013 until May 19, 2013.  Upon your expected return I will grant you an additional five days of Administrative Leave to compensate for the time you were out of the country prior to your leave expiring on April 30, 2013.  Therefore your Administrative Leave will end on May 25, 2013.

Please contact me to discuss any open positions that you are interested in.

Sincerely,

Stephanie Tokarski
Employee Relations Specialist
MGM Grand Hotel & Casino
Phone: (702) 891-7195

# EXHIBIT 15

Contradictions and false interactive process.



**MGM GRAND.**

June 10, 2013

Marisela Leon Martinez
1704 Lamplighter Lane
Las Vegas, NV 89104

Dear Ms. Leon,

On January 29, 2013, after engaging in the interactive process with you, the Company granted an administrative leave to you for 60 days.  The purpose of this administrative leave was to assist you in finding alternative positions that you are qualified for and that could reasonably accommodate your permanent work restrictions.  Your leave was later extended an additional 60 days as an additional accommodation.

To date, you have only expressed interest in one position, which, unfortunately, you did not meet the minimum qualifications to work in.  After reaching out to you multiple times to continue the interactive process, you failed to express interest in any other open positions.  Therefore, we are no longer able to extend your administrative leave.

Accordingly, this letter is to advise you that your employment has been separated effective June 6, 2013.  Enclosed you will find your separation PAN.  Also enclosed is a Separation Clearance Form which outlines items to be returned to the MGM.

If any questions arise, please do not hesitate to contact me.

Sincerely,

Stephanie Tokarski
Employee Relations Specialist
Phone: (702) 891-7195

# EXHIBIT 16

Positions available on the computer MGM  GRAND.

# Positions Available as of 02/01/13

| REQ ID | MANAGER | EMPLOYER | POSITION CODE | TITLE | POSTED | OPEN | FT | PT | OC | POST TYPE | STATUS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 161632 | LOLIVER | MGM Grand Las Vegas | 400210 | ADMINISTRATIVE ASSISTANT II - FLORAL | 12/20/2012 | 1 | 0 | 0 | 1 | Confidential | OPEN |
| 160735 | RCARR | MGM Grand Las Vegas | 590049 | APPRN BARTENDER - CENTRIFUGE | 11/13/2012 | 1 | 0 | 0 | 1 | Confidential | OPEN |
| 162836 | RBENZO | MGM Grand Las Vegas | 605004 | ASSISTANT BUTLER - MANSION | 1/29/2013 | 2 | 0 | 2 | 0 | Both | OPEN |
| 162791 | NMCGINNIS | MGM Grand Las Vegas | 605005 | ASSISTANT BUTLER - SKYLOFTS | 1/23/2013 | 1 | 0 | 1 | 0 | Both | OPEN |
| 162048 | GODFREYM | MGM Grand Las Vegas | 140064 | ASSISTANT CHEF - CONVENTION/BANQUETS | 1/16/2013 | 2 | 2 | 0 | 0 | Both | OPEN |
| 162340 | GODFREYM | MGM Grand Las Vegas | 140029 | ASSISTANT CHEF - CRAFTSTEAK | 1/23/2013 | 1 | 1 | 0 | 0 | Both | OPEN |
| 161054 | GODFREYM | MGM Grand Las Vegas | 140073 | ASSISTANT CHEF PASTRY - ROBUCHON | 11/30/2012 | 1 | 1 | 0 | 0 | Both | OPEN |
| 162099 | GODFREYM | MGM Grand Las Vegas | 140079 | ASSISTANT CHEF - L'ATELIER | 1/9/2013 | 1 | 1 | 0 | 0 | Both | OPEN |
| 162744 | CLEATHERS | MGM Grand Las Vegas | 065002 | ASSISTANT CONTROLLER CASINO | 1/18/2013 | 1 | 0 | 0 | 0 | Confidential | OPEN |
| 159987 | LGOMEZ | MGM Grand Las Vegas | 116195 | ASSISTANT EXECUTIVE HOUSEKEEPER | 10/9/2012 | 8 | 8 | 0 | 0 | Both | OPEN |
| 162370 | GODFREYM | MGM Grand Las Vegas | 140053 | ASSISTANT EXECUTIVE PASTRY CHEF | 1/23/2013 | 1 | 1 | 0 | 0 | Both | OPEN |
| 158830 | MKOCH | MGM Grand Las Vegas | 115069 | ASSISTANT GENERAL MANAGER - NOBHILL | 8/27/2012 | 1 | 1 | 0 | 0 | Both | OPEN |
| 161220 | ADELGADILL | MGM Grand Las Vegas | 115074 | ASSISTANT GENERAL MANAGER - SHIBUYA | 11/30/2012 | 1 | 1 | 0 | 0 | Both | OPEN |
| 161208 | JBIBBEE | MGM Grand Las Vegas | 115089 | ASSISTANT MANAGER - CRAFTSTEAK | 11/30/2012 | 1 | 1 | 0 | 0 | Both | OPEN |
| 162596 | JBIBBEE | MGM Grand Las Vegas | 115089 | ASSISTANT MANAGER - CRAFTSTEAK | 1/29/2013 | 1 | 1 | 0 | 0 | Both | OPEN |
| 162399 | CGOVAN | MGM Grand Las Vegas | 115115 | ASSISTANT MANAGER - STUDIO CAFE | 1/18/2013 | 1 | 1 | 0 | 0 | Both | OPEN |
| 162440 | CGOVAN | MGM Grand Las Vegas | 115103 | ASSISTANT MANAGER RESTAURANT - POOL | 1/15/2013 | 1 | 1 | 0 | 0 | Both | OPEN |
| 162577 | GODFREYM | MGM Grand Las Vegas | 140043 | ASST CHEF RESTAURANT ROOM - GRAND WOK | 1/14/2013 | 1 | 1 | 0 | 0 | Both | OPEN |
| 160658 | PRIVERA | MGM Grand Las Vegas | 505022 | ATTENDANT - STARBUCKS | 11/8/2012 | 2 | 0 | 2 | 1 | Confidential | OPEN |

02/01/13

# Positions Available as of 02/01/13

| REQ ID | MANAGER | EMPLOYER | POSITION CODE | TITLE | POSTED | OPEN | FT | PT | OC | H | POST TYPE | STATUS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 160669 | PERRIERR | MGM Grand Las Vegas | 305104 | AUTOMATION TECHNICIAN - CIRQUE | 11/2/2012 | 2 | 2 | 0 | 0 | 1 | Both | OPEN |
| 162751 | KDILLON | MGM Grand Las Vegas | 555008 | BAGGAGE HANDLER | 1/30/2013 | 3 | 0 | 0 | 3 | 0 | Both | OPEN |
| 162169 | JMORENO | MGM Grand Las Vegas | 525021 | BAKER - MANSION | 1/8/2013 | 1 | 1 | 0 | 0 | 0 | Confidential | OPEN |
| 162750 | KDILLON | MGM Grand Las Vegas | 125022 | BELL SUPERVISOR | 1/30/2013 | 1 | 1 | 0 | 0 | 0 | Both | OPEN |
| 160032 | MDONA | MGM Grand Las Vegas | 100318 | BEVERAGE MANAGER | 10/25/2012 | 1 | 1 | 0 | 0 | 0 | Both | OPEN |
| 162463 | CGOYAN | MGM Grand Las Vegas | 495059 | BUSPERSON - POOL CAFE | 1/18/2013 | 1 | 0 | 0 | 1 | 0 | Confidential | OPEN |
| 161723 | ADELGADILL | MGM Grand Las Vegas | 495055 | BUSPERSON - SHIBUYA | 12/20/2012 | 1 | 0 | 0 | 1 | 0 | Both | OPEN |
| 161814 | JBIBBEE | MGM Grand Las Vegas | 495062 | BUSPERSON — CRAFTSTEAK | 1/16/2013 | 1 | 0 | 0 | 1 | 0 | Both | OPEN |
| 160782 | NMCGINNIS | MGM Grand Las Vegas | 605003 | BUTLER - SKYLOFT | 11/5/2012 | 2 | 0 | 2 | 0 | 0 | Both | OPEN |
| 162851 | RBENZO | MGM Grand Las Vegas | 385020 | BUTLERS COORDINATOR - MANSION | 1/23/2013 | 1 | 0 | 1 | 0 | 0 | Both | OPEN |
| 162190 | DSCHMIDT | MGM Grand Las Vegas | 455143 | CABANA HOST - POOL | 1/9/2013 | 10 | 0 | 10 | 0 | 0 | Both | OPEN |
| 161711 | JIBARGUEN | MGM Grand Las Vegas | 470007 | CAGE CASHIER I | 12/21/2012 | 3 | 1 | 2 | 0 | 0 | Confidential | OPEN |
| 161849 | CLEATHERS | MGM Grand Las Vegas | 100067 | CAGE MANAGER | 12/12/2012 | 1 | 1 | 0 | 0 | 0 | Confidential | OPEN |
| 162351 | PERRIERR | MGM Grand Las Vegas | 305125 | CARPENTER - CIRQUE | 1/16/2013 | 1 | 1 | 0 | 0 | 0 | Both | OPEN |
| 162745 | CLEATHERS | MGM Grand Las Vegas | 045016 | CASINO CONTROLLER | 1/18/2013 | 1 | 1 | 0 | 0 | 0 | Confidential | OPEN |
| 160774 | JRAGIN | MGM Grand Las Vegas | 455064 | CONCIERGE - SKYLOFTS | 11/7/2012 | 1 | 1 | 0 | 0 | 0 | Both | OPEN |
| 162411 | GODFREYM | MGM Grand Las Vegas | 530259 | COOK - ROBUCHON | 1/23/2013 | 1 | 0 | 1 | 0 | 0 | Both | OPEN |

# Positions Available as of 02/01/13

| REQ ID | MANAGER | EMPLOYER | POSITION CODE | TITLE | POSTED | OPEN | FT | PT | OC | H | POST TYPE | STATUS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 161705 | KSIA | MGM Grand Las Vegas | 385150 | COORDINATOR - CONVENTION SET-UP | 12/20/2012 | 1 | 0 | 0 | 0 | | Confidential | OPEN |
| 160647 | DKIM | MGM Grand Las Vegas | 410123 | COUNT TEAM CLERK | 11/21/2012 | 2 | 0 | 0 | 2 | | Both | OPEN |
| 161753 | BRYSMITH | MGM Grand Las Vegas | 430044 | CUSTOMER RELATIONS REPRESENTATIVE | 12/27/2012 | 8 | 0 | 0 | 8 | | Both | OPEN |
| 161005 | CLEATHERS | MGM Grand Las Vegas | 040158 | DIRECTOR - NATIONAL MARKETING | 11/13/2012 | 1 | 0 | 0 | 0 | | Internal | OPEN |
| 161010 | KELLYT | MGM Grand Las Vegas | 040103 | DIRECTOR OF FRONT SERVICES | 11/13/2012 | 1 | 0 | 0 | 0 | | Internal | OPEN |
| 160345 | LGOMEZ | MGM Grand Las Vegas | 565921 | EVS ATTENDANT | 10/30/2012 | 1 | 0 | 0 | 0 | | Confidential | OPEN |
| 160629 | AFERTIG | MGM Grand Las Vegas | 565276 | EVS SPECIALIST | 11/1/2012 | 1 | 0 | 0 | 0 | | Confidential | OPEN |
| 160846 | LGOMEZ | MGM Grand Las Vegas | 565276 | EVS SPECIALIST | 11/13/2012 | 1 | 0 | 0 | 0 | | Confidential | OPEN |
| 162911 | LAWSOND | MGM Grand Las Vegas | 565276 | EVS SPECIALIST | 1/30/2013 | 5 | 0 | 0 | 5 | | Both | OPEN |
| 160394 | JANDREWS | MGM Grand Las Vegas | 145007 | EXECUTIVE HOST - SLOT MARKETING | 10/22/2012 | 1 | 0 | 0 | 0 | | Confidential | OPEN |
| 162030 | CLEATHERS | MGM Grand Las Vegas | 100009 | EXECUTIVE HOUSEKEEPER | 12/27/2012 | 3 | 3 | 0 | 0 | | Confidential | OPEN |
| 162734 | GALLETIK | MGM Grand Las Vegas | 100248 | EXECUTIVE MEETINGS SALES MANAGER | 1/23/2013 | 2 | 2 | 0 | 0 | | Confidential | OPEN |
| 161386 | MFIGUEROA | MGM Grand Las Vegas | 100512 | EXECUTIVE STEWARD - CONVENTION/BANQUETS | 12/11/2012 | 1 | 1 | 0 | 0 | | Both | OPEN |
| 161863 | JBIBBEE | MGM Grand Las Vegas | 490075 | FOOD SERVER - CRAFTSTEAK | 1/15/2013 | 1 | 0 | 0 | 1 | | Both | OPEN |
| 161620 | CVOLK | MGM Grand Las Vegas | 490069 | FOOD SERVER - DIEGO | 12/27/2012 | 2 | 0 | 0 | 2 | | Both | OPEN |
| 162454 | CGOVAN | MGM Grand Las Vegas | 490072 | FOOD SERVER - POOL | 1/18/2013 | 2 | 1 | 0 | 1 | | Both | OPEN |
| 162020 | ADELGADILL | MGM Grand Las Vegas | 490068 | FOOD SERVER - SHIBUYA | 1/16/2013 | 1 | 0 | 1 | 0 | | Both | OPEN |
| 162443 | HERNANDEZC | MGM Grand Las Vegas | 455017 | FRONT DESK CLERK | 1/10/2013 | 10 | 0 | 0 | 10 | | Both | OPEN |

# Positions Available as of 02/01/13

| Position | Name | Location | Req# | Job Title | Date | | | Type | Status |
|---|---|---|---|---|---|---|---|---|---|
| 162688 | NJIMENEZ | MGM Grand Las Vegas | 100090 | FRONT SERVICES MANAGER | 1/18/2013 | 0 | 0 | Both | OPEN |
| 162261 | CCLARNO | MGM Grand Las Vegas | 610021 | GATEKEEPER - CIRQUE | 1/16/2013 | 1 | 0 | Both | OPEN |
| 162871 | KSEGNER | MGM Grand Las Vegas | 100198 | GENERAL MANAGER - POOL | 1/29/2013 | 1 | 0 | Both | OPEN |
| 154726 | KSEGNER | MGM Grand Las Vegas | 100179 | GENERAL MANAGER - CRAFTSTEAK | 5/4/2012 | 1 | 1 | Both | OPEN |
| 162929 | LNASSER | MGM Grand Las Vegas | 456071 | GROUP RESERVATIONS SPECIALIST | 1/29/2013 | 1 | 0 | Both | OPEN |
| 161534 | VCASTILLO | MGM Grand Las Vegas | 566289 | GUEST ROOM ATTENDANT – HOUSEKEEPING | 12/27/2012 | 30 | 30 | Both | OPEN |
| 161256 | NHALVERSON | MGM Grand Las Vegas | 480021 | HOST - SPA | 11/27/2012 | 2 | 2 | Confidential | OPEN |
| 161968 | LESTERA | MGM Grand Las Vegas | 480021 | HOST - SPA | 1/8/2013 | 1 | 0 | Both | OPEN |
| 161621 | CVOLK | MGM Grand Las Vegas | 480035 | HOST PERSON - DIEGO | 12/27/2012 | 2 | 1 | Both | OPEN |
| 160287 | PRIVERA | MGM Grand Las Vegas | 480050 | HOSTPERSON - GRAND BUFFET | 10/30/2012 | 2 | 1 | Confidential | OPEN |
| 162439 | CGGOVAN | MGM Grand Las Vegas | 480041 | HOSTPERSON - POOL | 1/15/2013 | 2 | 0 | Both | OPEN |
| 162828 | ADELGADILL | MGM Grand Las Vegas | 480053 | HOSTPERSON - SHIBUYA | 1/29/2013 | 1 | 0 | Both | OPEN |
| 161518 | RJMARTIN | MGM Grand Las Vegas | 125108 | HOUSEKEEPING FLOOR SUPERVISOR | 12/20/2012 | 2 | 1 | Both | OPEN |
| 162476 | KSEGNER | MGM Grand Las Vegas | 116143 | J1 INTERNATIONAL MANAGEMENT TRAINEE | 1/23/2013 | 1 | 0 | Confidential | OPEN |
| 162352 | PERRIERR | MGM Grand Las Vegas | 280036 | LEAD CARPENTER - CIRQUE | 1/16/2013 | 1 | 0 | Both | OPEN |
| 161974 | TMARTIN-MGM | MGM Grand Las Vegas | 100301 | MANAGER - HORTICULTURE | 12/27/2012 | 1 | 0 | Confidential | OPEN |
| 162944 | TINGLEYP | MGM Grand Las Vegas | 100767 | MANAGER - PRODUCTION SERVICES | 1/28/2013 | 1 | 0 | Both | OPEN |
| 161188 | PERRIERR | MGM Grand Las Vegas | 100078 | MANAGER - SOUND ENTERTAINMENT PROJECTS | 11/20/2012 | 1 | 0 | Confidential | OPEN |
| 161957 | CLEATHERS | MGM Grand Las Vegas | 100210 | MANAGER - TRAINING | 12/24/2012 | 1 | 0 | Confidential | OPEN |

# Positions Available as of 02/01/13

| 162413 MCHAU | MGM Grand Las Vegas | 100103 | MANAGER OF INVENTORY CONTROL - WAREHOUSE | 1/10/2013 | 1 | 1 | 0 | 0 | 0 | Both | OPEN |

| REQ ID | MANAGER | EMPLOYER | POSITION CODE | TITLE | POSTED | OPEN | FT | PT | OC | H | POST TYPE | STATUS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 162915 | CLEATHERS | MGM Grand Las Vegas | 250002 | MAP | 1/25/2013 | 2 | 2 | 0 | 0 | 0 | Confidential | OPEN |
| 162513 | NHALVERSON | MGM Grand Las Vegas | 350003 | MASSAGE THERAPIST - SPA | 1/15/2013 | 3 | 0 | 3 | 0 | 0 | Both | OPEN |
| 162051 | GODFREYM | MGM Grand Las Vegas | 520013 | MASTER COOK - L'ATELIER | 1/23/2013 | 1 | 0 | 1 | 0 | 0 | Both | OPEN |
| 159468 | PYEAGER | MGM Grand Las Vegas | 595169 | MODEL/COCKTAIL SERVER - ROUGE | 9/25/2012 | 2 | 0 | 2 | 0 | 1 | Both | OPEN |
| 162310 | HERNANDEZC | MGM Grand Las Vegas | 455031 | POOL ATTENDANT | 1/7/2013 | 75 | 0 | 75 | 0 | 0 | Both | OPEN |
| 162196 | DSCHMIDT | MGM Grand Las Vegas | 350009 | POOL GREETER | 1/9/2013 | 18 | 0 | 18 | 0 | 0 | Both | OPEN |
| 162191 | DSCHMIDT | MGM Grand Las Vegas | 415008 | RECEPTIONIST - POOL | 1/9/2013 | 6 | 0 | 6 | 0 | 0 | Both | OPEN |
| 162984 | NHALVERSON | MGM Grand Las Vegas | 415005 | RECEPTIONIST - SPA | 1/30/2013 | 3 | 0 | 3 | 0 | 0 | Both | OPEN |
| 162821 | MFUJII | MGM Grand Las Vegas | 455025 | REPRESENTATIVE - TICKET OFFICE | 1/29/2013 | 3 | 0 | 3 | 0 | 0 | Both | OPEN |
| 162798 | DOWNEYO | MGM Grand Las Vegas | 455070 | REPRESENTATIVE - VIP SERVICES | 1/23/2013 | 2 | 0 | 2 | 0 | 0 | Both | OPEN |
| 155573 | YAMASAKIN | MGM Grand Las Vegas | 410112 | RUNNER MAILROOM | 6/14/2012 | 1 | 1 | 0 | 0 | 0 | Confidential | OPEN |
| 162892 | KMORSEY | MGM Grand Las Vegas | 250089 | SALES ASSOCIATE - RETAIL | 1/23/2013 | 4 | 0 | 4 | 0 | 0 | Both | OPEN |
| 163095 | CLEATHERS | MGM Grand Las Vegas | 475055 | SECURITY OFFICER 1 | 1/30/2013 | 36 | 0 | 36 | 0 | 0 | Confidential | OPEN |
| 162557 | JIBARGUEN | MGM Grand Las Vegas | 127015 | SHIFT SUPERVISOR - CAGE | 1/18/2013 | 1 | 1 | 0 | 0 | 0 | Both | OPEN |
| 161937 | KSEGNER | MGM Grand Las Vegas | 575002 | SOMMELIER - CRAFTSTEAK | 1/15/2013 | 1 | 1 | 0 | 0 | 0 | Both | OPEN |
| 160279 | SEECHR | MGM Grand Las Vegas | 305027 | STAGEHAND 1 - ARENA | 10/22/2012 | 11 | 0 | 11 | 0 | 3 | Confidential | OPEN |
| 160378 | TINGLEYP | MGM Grand Las Vegas | 305028 | STAGEHAND I - HOLLYWOOD | 10/22/2012 | 3 | 0 | 3 | 0 | 2 | Both | OPEN |

02/01/13

## Positions Available as of 02/01/13

| REQ ID | MANAGER | EMPLOYER | POSITION CODE | TITLE | POSTED | OPEN | FT | PT | OC | H | POST TYPE | STATUS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 161276 | TINGLEYP | MGM Grand Las Vegas | 305072 | STAGEHAND III- CIRQUE | 11/30/2012 | 5 | 0 | 0 | 5 | 2 | Both | OPEN |
| 160466 | KMORSEY | MGM Grand Las Vegas | 260057 | STOCK ASSOCIATE - FRONT PAGE | 10/25/2012 | 2 | 0 | 0 | 2 | 0 | Confidential | OPEN |
| 161419 | TINGLEYP | MGM Grand Las Vegas | 125361 | SUPERVISOR - PRODUCTION SERVICES | 12/12/2012 | 3 | 3 | 0 | 0 | 2 | Both | OPEN |
| 182121 | MITCHELL | MGM Grand Las Vegas | 125003 | SUPERVISOR - RACE AND SPORTS | 1/15/2013 | 1 | 1 | 0 | 0 | 0 | Internal | OPEN |
| 162324 | TJEFFERY | MGM Grand Las Vegas | 126089 | SUPERVISOR - SECURITY | 1/8/2013 | 1 | 1 | 0 | 0 | 0 | Confidential | OPEN |
| 161569 | BUONOF | MGM Grand Las Vegas | 365001 | SURVEILLANCE OPERATOR | 12/17/2012 | 1 | 0 | 0 | 1 | 0 | Both | OPEN |
| 162119 | DPERSI | MGM Grand Las Vegas | 305009 | TECH ARENA CONVERSION I- OPERATIONS | 1/10/2013 | 10 | 0 | 0 | 10 | 1 | Both | OPEN |
| 163045 | ADALESSIO | MGM Grand Las Vegas | 100068 | TECHNICAL SERVICES MANAGER | 1/29/2013 | 1 | 1 | 0 | 0 | 0 | Both | OPEN |
| 162847 | AWILLIFORD | MGM Grand Las Vegas | 390003 | TITLE 31 AUDITOR - COMPLIANCE | 1/23/2013 | 1 | 1 | 0 | 0 | 0 | Both | OPEN |
| 158996 | MLAWRENCE | MGM Grand Las Vegas | 560028 | TRANSPORTATION DISPATCHER | 8/17/2012 | 2 | 0 | 0 | 2 | 1 | Confidential | OPEN |
| 160051 | TAYLOJ | MGM Grand Las Vegas | 455003 | TRANSPORTATION GREETER | 10/18/2012 | 1 | 0 | 0 | 1 | 0 | Confidential | OPEN |
| 159054 | CLEATHERS | MGM Grand Las Vegas | 920017 | UNIFORM SPECIALIST | 8/30/2012 | 1 | 0 | 0 | 1 | 0 | Confidential | OPEN |
| 158445 | PELLETIF | MGM Grand Las Vegas | 610001 | USHER - HOLLYWOOD THEATER | 8/6/2012 | 2 | 0 | 1 | 1 | 1 | Confidential | OPEN |
| 162748 | KDILLON | MGM Grand Las Vegas | 565044 | VALET - UTILITY PARKING ATTENDANT | 1/29/2013 | 15 | 0 | 1 | 15 | 0 | Both | OPEN |
| 161277 | TINGLEYP | MGM Grand Las Vegas | 305096 | WARDROBE ATTENDANT - CIRQUE | 11/30/2012 | 4 | 0 | 0 | 4 | 1 | Both | OPEN |
| 160148 | MKOCH | MGM Grand Las Vegas | 100770 | WINE MANAGER - CRAFTSTEAK | 12/3/2012 | 1 | 1 | 0 | 0 | 0 | Confidential | OPEN |

# EXHIBIT 17

**Separation of the Company 06/10/2013**

**PAN - Separation**

Effective Date: 06/10/13 MM/DD/YY
Last Day Worked: 01/29/13 MM/DD/YY

**MARISELA LEON MARTINEZ - 433575**
1704 LAMPLIGHTER LN
LAS VEGAS NV  89104  (702) 426-3933

Doc ID : 7804459

|  | From |  | To |
|---|---|---|---|
| Employer | MGM GRAND HOTEL, LLC | 001 |  |
| Company | MGM GRAND HOTEL | 001 |  |
| Division | FOOD & BEVERAGE | 300 |  |
| Department | CONVENTION/BANQUETS | 31512 |  |
| Sub Department | STEWARDS | 3005 |  |
| Position | KITCHEN WORKER|100S3/8 | 565271 |  |
| Shift | DAY | 2 |  |
| Rate of Pay | HOURLY H | 13.0920 |  |
| Employment Status | LOA ON-CALL |  |  |
| Remarks | Employee has permanent restictions that cannot be accommodated. Administrative leave has expired. Please pay flex. |  |  |

# EXHIBIT 18

**Complaint at the EEOC Offices.**

**EQUAL** **Appt Date:** _____

**Appt Time:** _____

**COMMISSION**

SEP 16 2013

Please immediately complete the entir_____ ...... U.S. Equal Employment Opportunity Commission ("EEOC"). **REMEMBER,** a charge of employment discrimination must be filed within the time limits imposed by law, generally within 180 days or in some places 300 days of the alleged discrimination. Upon receipt, this form will be reviewed to determine EEOC coverage. Answer all questions as completely as possible, and attach additional pages if needed to complete your response(s). If you do not know the answer to a question, answer by stating "not known." If a question is not applicable, write "n/a." Please Print.

**1.** **Personal Information**

Last Name: Leon                          First Name: Marisela                          MI: n/a

Street or Mailing Address: 1704 Lamplighter Ln                          Apt Or Unit #:

City: las Vegas                          County: Clark                          State: NV                          ZIP: 89104

Phone Numbers: Home: (_____) _____                          Work: (_____)

Cell: (  702  ) 426-3933                          Email Address: mariselaleonlv@yahoo.com

Date of Birth: ~~April 22, 1959~~                          Sex: Male ☐   Female ☒   Do You Have a Disability? ☒ Yes   ☐ No

**Please answer each of the next three questions.** i. Are you Hispanic or Latino? ☒ Yes   ☐ No

ii. What is your Race? Please choose all that apply. ☐ American Indian or Alaska Native   ☐ Asian   ☒ White

☐ Black or African American   ☐ Native Hawaiian or Other Pacific Islander

iii. What is your National Origin (country of origin or ancestry)? Cuba

**Please Provide The Name Of A Person We Can Contact If We Are Unable To Reach You:**

Name: Yenisey Vargas                          Relationship: Hija

Address: 1973 Valley View St.                          City: las vegas                          State: NV   Zip Code: 89169

Home Phone: (  786  ) 519-9905                          Other Phone: (_____)

**2. I believe that I was discriminated against by the following organization(s):** (Check those that apply)

☒ Employer   ☐ Union   ☐ Employment Agency   ☐ Other (Please Specify)

**Organization Contact Information** (If the organization is an employer, provide the address where you actually worked. If you work from home, check here ☐ and provide the address of the office to which you reported.) If more than one employer is involved, attach additional sheets.

Organization Name: MGM GRAND

Address: 3799 las Vegas Blvd                          County: Clark

City: Las vegas                          State: NV   Zip: 89109                          Phone: (  702  ) 891-1111

Type of Business: Hotel & Casino                          Job Location if different from Org. Address:

Human Resources Director or Owner Name: Cristyna Leathers                          Phone: 702-891-7193

Number of Employees in the Organization at All Locations: Please Check (√) One

☐ Fewer Than 15   ☐ 15 - 100   ☐ 101 - 200   ☐ 201 - 500   ☒ More than 500

**3. Your Employment Data** (Complete as many items as you can)   **Are you a Federal Employee?** ☐ Yes  ☒ No

Date Hired: 05/20/2004                          Job Title At Hire: kitchen Worker

Pay Rate When Hired: 12.00                          Last or Current Pay Rate: $ 13.0920

Job Title at Time of Alleged Discrimination: Kitchen Worker                          Date Quit/Discharged: 06/10/2013

Name and Title of Immediate Supervisor: Mitchel, Supervisor Steward

If Job Applicant, Date You Applied for Job _____   Job Title Applied For _____

**4.  What is the reason (basis) for your claim of employment discrimination?**

*FOR EXAMPLE, if you feel that you were treated worse than someone else because of race, you should check the box next to Race. If you feel you were treated worse for several reasons, such as your sex, religion and national origin, you should check all that apply. If you complained about discrimination, participated in someone else's complaint, or filed a charge of discrimination, and a negative action was threatened or taken, you should check the box next to Retaliation.*

☐ Race   ☐ Sex   ☐ Age   ☒ Disability   ☐ National Origin   ☐ Religion   ☐ Retaliation   ☐ Pregnancy   ☐ Color (typically a difference in skin shade within the same race)   ☐ Genetic Information; choose which type(s) of genetic information is involved:

☐ i. genetic testing   ☐ ii. family medical history   ☐ iii. genetic services (genetic services means counseling, education or testing)

If you checked color, religion or national origin, please specify: _____

If you checked genetic information, how did the employer obtain the genetic information? _____

Other reason (basis) for discrimination (Explain). _____

**5.  What happened to you that you believe was discriminatory?**  Include the date(s) of harm, the action(s), and the name(s) and title(s) of the person(s) who you believe discriminated against you.  Please attach additional pages if needed.
*(Example: 10/02/06 - Discharged by Mr. John Soto, Production Supervisor)*

A)  Date:  06/10/2013          Action: Separación de la Compañía por tener restricciones permanentes producto de Discapacidad Parcial Permanente.

Name and Title of Person(s) Responsible: Cristina Leathers, Human Resources Manager

B)  Date:  06/10/2013          Action: Separación de la Compañía por tener restricciones permanentes producto de Discapacidad Parcial Permanente.

Name and Title of Person(s) Responsible: Patricia Bush, Employee Relations Director

**6.  Why do you believe these actions were discriminatory?  Please attach additional pages if needed.**
La acción tomada fue discriminatoria ya que la razón que tuvieron en cuenta para mi separación es mi discapacidad ya que tengo discapacidad parcial permanente, que me limita a levantar pesos superiores a 18 libras, producto de un accidente de trabajo que sufrí hace un tiempo atrás, pero además es discriminatoria porque existe una trabajadora con las mismas condiciones que yo y fue reacomodada y continúa trabajando en la compañía, entonces porque "unos si y otros no". Según ADA puedo ser reacomodada.

**7.  What reason(s) were given to you for the acts you consider discriminatory?  By whom?  His or Her Job Title?**
La razón que me dieron fue que tengo restricciones permanentes (No puedo levantar más de 18 libras) y que no puedo ser acomodada y debía ser separada de la compañía. Esta decisión me la comunicarón la directora de Recursos Humanos Mrs. Christina Leathers, la directora de Employee Relations Mrs. Patricia Bush, así como las Especialistas de Employee Relations Nallely Jimenez y Stephanie Tokarski. (Var anexo A)

**8. Describe who was in the same or similar situation as you and how they were treated.  For example, who else applied for the same job you did, who else had the same attendance record, or who else had the same performance?  Provide the race, sex, age, national origin, religion, or disability of these individuals, if known, and if it relates to your claim of discrimination.  For example, if your complaint alleges race discrimination, provide the race of each person; if it alleges sex discrimination, provide the sex of each person; and so on.  Use additional sheets if needed.**

Of the persons in the same or similar situation as you, who was treated *better* than you?

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Mercedes Bengochea | Disability | Kitchen Worker |

Description of Treatment   Fue reacomodada en la posición que ocupaba antes de sufrir la discapacidad y continúa trabajando en la compañía, con sus restricciones que la limitan a levantar peso al igual que sucede en mi caso.

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
|  |  |  |

Description of Treatment

3

Of the persons in the same or similar situation as you, who was treated *worse* than you?

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| | | |
| **Description of Treatment** | | |

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| | | |
| **Description of Treatment** | | |

Of the persons in the same or similar situation as you, who was treated the *same* as you?

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| | | |
| **Description of Treatment** | | |

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| | | |
| **Description of Treatment** | | |

Answer questions 9-12 **only** if you are claiming discrimination based on disability. If not, skip to question 13. Please tell us if you have more than one disability. Please add additional pages if needed.

9.   Please check all that apply:

☒ Yes, I have a disability

☐ I do not have a disability now but I did have one

☐ No disability but the organization treats me as if I am disabled

10. What is the disability that you believe is the reason for the adverse action taken against you? Does this disability prevent or limit you from doing anything? (e.g., lifting, sleeping, breathing, walking, caring for yourself, working, etc.).
La discapacidad que yo tengo y que fue la razon de la accion en contra mia es Discapacidad Parcial Permanente, que implica restricciones permanente que me limitan a no levantar mas de 18 libras. (ver anexo # 5)

11. Do you use medications, medical equipment or anything else to lessen or eliminate the symptoms of your disability?

Yes ☒   No ☐

If "Yes," what medication, medical equipment or other assistance do you use?
Ibuprofen 800 mg, Advil, Voltaren 1% Gel, Hidrocodone.

12. Did you ask your employer for any changes or assistance to do your job because of your disability?

Yes ☒   No ☐

If "YES," when did you ask? Jan 28, 2013 _____   How did you ask (verbally or in writing)? Verbally (ver anexo # 4)

Who did you ask? (Provide full name and job title of person)

Cristina Leathers(Hum. Res. Dir.), Patricia Bush(Emp. Relat. Dir.), Mitchel(Steward Dir.), Nalleli Jimenez, Stephanie Tokarski.

Describe the changes or assistance that you asked for:
Siempre estuve insistiendo en mi deseo de continuar trabajando, que por favor me realizaran un modificación de mi trabajo como bien lo contempla ADA en una de sus alternativas para estos casos, además indiqué que ya existe un precedente con un caso similar de una compañera con discapacidad que fue reacomodada, tambien la señora Patricia L.Holder(Indutrial Claims Coord)consideró algo similar

How did your employer respond to your request?
La respuesta que recibí fue de que no podian acomodarme debido a mis restricciones permanentes.

4

**13.  Are there any witnesses to the alleged discriminatory incidents?  If yes, please identify them below and tell us what they will say. (Please attach additional pages if needed to complete your response)**

| A. Full Name | Job Title | Address & Phone Number |
|---|---|---|
| Alma López | Employee Relation director's Assistant | Employee Relation Office 702-891-7193 |

**What do you believe this person will tell us?**
not known

| B. Full Name | Job Title | Address & Phone Number |
|---|---|---|
| | | |

**What do you believe this person will tell us?**

---

**14.  Have you filed a charge previously in this matter with EEOC or another agency?**      Yes ☐    No ☒

**15.  If you have filed a complaint with another agency, provide name of agency and date of filing:**

**16.  Have you sought help about this situation from a union, an attorney, or any other source?**    Yes ☒   No ☐
Provide name of organization, name of person you spoke with and date of contact. Results, if any?
Unión Culinaria, Floy Williams, 01/29/2013. (ver anexo #6)

**Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire.  If you would like to file a charge of job discrimination, you must do so either within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located in a place where a state or local government agency enforces laws similar to the EEOC's laws.  If you do not file a charge of discrimination within the time limits, you will lose your rights.  If you would like more information before filing a charge or you have concerns about EEOC's notifying the employer, union, or employment agency about your charge, you may wish to check Box 1.  If you want to file a charge, you should check Box 2.**

Box 1  ☐ I want to talk to an EEOC employee before deciding whether to file a charge.  I understand that by checking this box, I have not filed a charge with the EEOC.  I also understand that I could lose my rights if I do not file a charge in time.

Box 2  ☒ I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above.  I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name.  I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination.

| Marisela León Martínez. | 09/13/2013 |
|---|---|
| **Signature** | **Today's Date** |

**PRIVACY ACT STATEMENT: This form is covered by the Privacy Act of 1974: Public Law 93-579.** Authority for requesting personal data and the uses thereof are:
1. **FORM NUMBER/TITLE/DATE.** EEOC Intake Questionnaire (9/20/08).
2. **AUTHORITY.** 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626. 42 U.S.C. 12117(a), 42 USC §2000ff-6.
3. **PRINCIPAL PURPOSE.** The purpose of this questionnaire is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge.
4. **ROUTINE USES.** EEOC may disclose information from this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters
5. **WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION.** Providing of this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge. It is not mandatory that this form be used to provide the requested information.

# EXHIBIT 19

**Right to Demand Letter.**



EEOC Form 161-B (11/16)

## U.S. SEXUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

To: Marisela Leon
1704 Lamplighter Lane
Las Vegas, NV 89104

From: Las Vegas Local Office
333 Las Vegas Blvd South
5th Floor Ste 5560
Las Vegas, NV 89101

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 487-2013-01248 | Michael Mendoza, Investigator | (702) 388-5057 |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

JUL 5 - 2017

Enclosures(s)

Christine Park-Gonzalez,
Acting Director

(Date Mailed)

cc: Mr. Nathan Lloyd, General Counsel Labor Employment
MGM GRAND HOTEL, LLC
4888 Frank Sinatra Drive
Las Vegas, NV

EEOC Form 291

 

## MEMORANDUM

### RECOMMENDATION FOR CLOSURE

TO:  CHRISTINE PARK-GONZALEZ, ACTING LOCAL DIRECTOR          CHARGE NO.  487-2013-01248C

FROM:  MICHAEL MENDOZA, FEDERAL INVESTIGATOR

SUBJECT:  LEON, MARISELA                  MGM GRAND HOTEL, LLC DBA MGM GRAND
          Charging Party          v          Respondent

I recommend dismissal/closure of this charge based on the following:

[ ]  Failure to State a Claim                [ ]  Settlement/Mediation (including withdrawals with Benefits and successful conciliations)

[ ]  No Covered ADA Disability              [ ]  Withdrawal without Benefits

[ ]  Too Few Employees/Members             [X]  Right to Sue (Issued on Request)

[ ]  Untimely                              [ ]  Director must certify: processing unlikely to be completed within 180 days of filing (Title VII/ADA/GINA).

[ ]  Not Reasonable Cause

[ ]  Other  (Duplicate Charge with TWC)

Specific information in support of recommendation/decision:

Statute: ADA   Basis:  Record Of Disability, Retaliation Issue: Reasonable Accommodation, Discharge

The Element(s) of Proof missing in order to establish a violation:

On 07/05/2017, CP requested the NRTS. Per PCHP, I recommend Dismissal and a Right to Sue be issued in order to preserve CP's rights.

Decision by /
Recommendation approved by: _____          _____
                                        (Signature)                              (Date)

# EXHIBIT 20

Motion for Reconsideration and Reopen Denied

Case Closed Without Prejudice.

1   *pro se* parties are bound by the Federal Rules of Civil Procedure. *See Briones v. Riviera Hotel &*

2   *Casino*, 116 F.3d 379, 381 (9th Cir. 1996). Moreover, because the court has already found that

3   there exist meritorious grounds for dismissing plaintiff's complaint, reconsideration of defendant's

4   motion to dismiss would be futile.

5        Therefore, because plaintiff presents no grounds warranting reconsideration of its prior

6   order, the court will deny plaintiff's instant motions. However, the court dismissed plaintiff's

7   claims without prejudice. *See* (ECF No. 14). Therefore, if plaintiff so desires, she is free to file a

8   new action in an appropriate forum that properly asserts her stated claims.

9   **IV.    Conclusion**

10       Accordingly,

11       IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff's motion for

12   reconsideration (ECF No. 16) be, and the same hereby is, DENIED.

13       IT IS FURTHER ORDERED that plaintiff's motion to reopen case (ECF No. 17) be, and

14   the same hereby is, DENIED.

15       DATED February 20, 2019.

16

17   UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28

James C. Mahan
U.S. District Judge                                                    - 3 -

6/5/2018

# United States District Court

## District of Nevada

**Notice of Electronic Filing**

The following transaction was entered on 6/5/2018 at 11:37 AM PDT and filed on 6/5/2018
**Case Name:**       Martinez v. MGM Grand Hotel LLC
**Case Number:**     2:17-cv-02454-JCM-GWF
**Filer:**
**WARNING: CASE CLOSED on 06/05/2018**
**Document Number:** 14

**Docket Text:**
**ORDER. IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that [8] defendant's motion to dismiss be, and the same hereby is, GRANTED.
IT IS FURTHER ORDERED that plaintiff's complaint be, and the same hereby is, DISMISSED WITHOUT PREJUDICE. The clerk shall enter judgment accordingly and close the case. Signed by Judge James C. Mahan on 6/5/2018. (Copies have been distributed pursuant to the NEF - MR)**

**2:17-cv-02454-JCM-GWF Notice has been electronically mailed to:**

Hilary Barrett Muckleroy    hmuckleroy@mgmresorts.com, abaker@mgmresorts.com,
jbriggs@mgmresorts.com, mtwist@mgmresorts.com

Erica J Chee    echee@mgmresorts.com, idponce@mgmresorts.com, mtwist@mgmresorts.com

**2:17-cv-02454-JCM-GWF Notice has been delivered by other means to:**

Marisela Leon Martinez
1704 Lamplighter Ln
Las Vegas, NV 89104

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1101333072 [Date=6/5/2018] [FileNumber=8741697-0]
[a73f13756a3fb26583de066c86eaec3c1758c326b40d8a9738ce207aa19691c4f367
605c3b102eac5f10163518d09797c852c929e1cb249900e5401e251a0893]]